**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BALLY TECHNOLOGIES, INC. | |
| Plaintiff, | Case No. 2:10-cv-00440-PMP-GWF |
| vs. | **ORDER** |
| BUSINESS INTELLIGENCE SYSTEMS SOLUTIONS, INC. | **Emergency Motion to Compel the Deposition of Richard Haddrill - #77, 81** |
| Defendant. | |

This matter is before the Court on Defendant Business Intelligence Systems Solutions, Inc.'s ("BIS2") Emergency Motion to Compel the Deposition of Richard Haddrill and the 30(b)(6) Depositions of Bally Technologies, Inc. ("Bally") (#77, #81), filed on August 8, 2011; Plaintiff Bally's Opposition to BIS2's Emergency Motion to Compel (#91), filed on August 15, 2011; and BIS2's Reply in Support of Motion to Compel (#96), filed on August 18, 2011.

The Court has ruled on, or the parties have resolved their disputes, on all but one of the issues raised in Defendant BIS2's motion to compel. The remaining issue concerns BIS2's motion to compel Bally to respond to Request for Production No. 57 which requests:

> All documents that relate to any actual or potential license agreement, including without limitations, cross-licenses, agreements of non-assertion, covenants not to sue, acquisition agreements, and other types of agreements, and/or negotiation for such *that relates to or involves any Plaintiff patents*, including without limitation, all documents relating to communications concerning any such license agreement or negotiation. (emphasis added)

*Motion to Compel (#77, #81), Exhibit 1.*

Bally objected to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and not limited to scope and time. *Motion to Compel (#77, #81), Exhibit 2.* In

its motion to compel, BIS2 did not attempt to limit the scope of this request or otherwise justify it, other than to state: "Bally's own actions prove that these documents are highly relevant. Bally insisted that BIS2 produce such documents and used several such documents from BIS2's production as exhibits during depositions last month." *Motion to Compel (#77, #81)*, p. 11.

In response to this statement, Bally stated in its opposition: "The problem with BIS2's argument is that it assumes Bally has not produced any agreements between Bally and its customers for the Business Intelligence products. In fact, Bally has produced the agreements between Bally and its customers. This could have been explained to BIS2 rather simply had there been a proper meet and confer." *Opposition (#92)*, p. 19.

In reply, BIS2 argues that Request No. 57 "is directly relevant to determining an established royalty rate within the relevant market." BIS2 cites *American Original Corp. v. Jenkins Food Corp.*, 774 F.2d 459, 464 (Fed.Cir. 1985) for the proposition that *in the absence of any existing royalty rate*, "royalties paid by others for use of a comparable patent in the industry" was relevant to establishing a reasonable royalty." *Reply (#97)*, p. 8. (Emphasis added by the Court). At the hearing on this motion, BIS2's counsel stated that Bally should be required to produce documents relating to licenses issued by it for "comparable patents in the industry."

*American Original* was not a discovery case. The Federal Circuit in that case affirmed the district's trial determination of a reasonable royalty based on license agreements for a comparable patent. In upholding the district court's reliance on such evidence, the court stated:

> The district court pointed out that since American had not licensed the Marvin patent, there was no existing royalty rate. It therefore "turn[ed] to the best evidence of what a reasonable royalty would produce–that is, royalties paid by others for use of a comparable patent in the industry." That was the amount, the court concluded, that "a licensee such as defendants and a licensor, such as plaintiff, would have agreed upon, at the time the infringement began...." The court stated that "the Carlson patent was a similar or comparable system, and one used by many in the industry. The sum paid by plaintiff to Carlson, by defendants to Carlson, and by others to Carlson, are evidence of what a fair royalty would be. These were negotiated sums in arms length transactions."

*American Original* obviously stands for the proposition that evidence regarding license agreements for a comparable patent may be admitted where the patent-in-suit has not been licensed

1   and there is no established royalty rate.

2         In *Resqnet.Com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed.Cir. 2010), the court noted that

3   "a comprehensive (but unprioritized and often overlapping) list of relevant factors for a reasonable

4   royalty calculation appears in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp.

5   1116, 1120 (S.D.N.Y. 1970)." In limiting the district court's use of those factors, the Federal

6   Circuit stated:

> "Determining a fair and reasonable royalty is often ... a difficult judicial chore, seeming often to involve more the talents of a conjurer than those of a judge." *Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed.Cir.1988). Still, a reasonable royalty analysis requires a court to hypothesize, not to speculate. *Id.* at 1575. At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention. *See, e.g., Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 507, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964) ("[T]he present statutory rule is that only 'damages' may be recovered.").
>
> Thus, the trial court must carefully tie the proof of damages to the claimed invention's footprint in the market place. . . .

*Resqnet.Com*, 594 F.3d at 869.

The court further stated:

> The first *Georgia–Pacific* factor requires considering past and present royalties received by the patentee "for the licensing of the *patent in suit,* proving or tending to prove an established royalty." 318 F.Supp. at 1120 (emphasis added). By its terms, this factor considers only past and present licenses to the actual patent and the actual claims in litigation. This court has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies *other* than the patent in suit. *See Lucent,* 580 F.3d at 1329 ("[A] lump-sum damages award [based on a reasonable royalty] cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers, one of which is arguably in the ballpark of the jury's award, particularly when it is doubtful that the technology of those license agreements is in any way similar to the technology being litigated here.")

25         This Court recognizes that relevancy under Fed.R.Civ.Pro. 26(b) is broadly construed and

26   that in order to be discoverable, information need not be admissible at trial so long as it is

27   reasonably calculated to lead to the discovery of admissible evidence. On the other hand, the court

28   may deny or limit discovery if the burden and expense of the proposed discovery outweighs its

likely benefit. Rule 26(b)(2)(C)(iii). Evidence regarding Bally's licensing agreements involving similar patented technologies may be relevant and lead to the discovery of admissible evidence if the subject patents-in-suit have not been licensed or there is reason to believe that Bally's licenses of the subject patents did not involve arms length business transactions that reflect the actual value of the patents in the market place.

BIS2's very sketchy motion to compel fails to persuade this Court, even under the liberal standard of Rule 26, that it should order Bally to produce documents relating to other Bally owned patents subject to the vague limitation to "comparable patents in the industry." Bally states in its opposition, which is also scant on factual detail, that it has produced the agreements between Bally and its customers for "the Business Intelligence products." If this means that Bally has produced actual license agreements, negotiated at arms- length, regarding the patents-in-suit, then that is the best evidence on which to establish a reasonable royalty rate. To the extent that Bally has not already disclosed all license agreements for the patents-in-suit, then it should do so. BIS2 has not shown, however, that license agreements involving other patents are sufficiently relevant to be discoverable. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Business Intelligence Systems Solutions, Inc.'s ("BIS2") Emergency Motion to Compel (#77, #81) in regard to Request for Production No. 57 is **denied**, without prejudice to Defendant renewing its motion as to this request if it can demonstrate a factual basis as to why discovery regarding licensing agreements for other patents is relevant to its defense.

DATED this 30th day of August, 2011.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge