UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BALLY TECHNOLOGIES, INC.,              )
                                       )
          Plaintiff/Counter-Defendant, )        2:10-CV-00440-PMP-GWF
                                       )
v.                                     )
                                       )        ORDER
BUSINESS INTELLIGENCE SYSTEMS          )
SOLUTIONS, INC.,                       )
                                       )
          Defendant/Counter-Plaintiff. )
                                       )

Presently before the Court is Defendant Business Intelligence Systems Solutions, Inc.'s Motion for Summary Judgment of No Infringement (Doc. #128), filed on December 22, 2011. Plaintiff Bally Technologies, Inc. filed an Opposition (Doc. #151) on January 30, 2012. Defendant filed a Reply (Doc. #164) on February 10, 2012.

Also before the Court is Defendant's Motion for Summary Judgment of No Willful Infringement (Doc. #130), filed on December 22, 2011. Plaintiff filed an Opposition (Doc. #153) on January 30, 2012. Defendant filed a Reply (Doc. #157) on February 10, 2012.

Also before the Court is Plaintiff's Motion for Partial Summary Judgment Regarding BIS2's Invalidity Defense and Counterclaim (Doc. #135), filed on December 23, 2011. Defendant filed an Opposition (Doc. #140) on January 30, 2012. Plaintiff filed a Reply (Doc. #161) on February 10, 2012.

Also before the Court is Defendant's Motion to Strike or In Limine to Exclude Mr. Ferraro's Two Software Programs and All Material and Testimony Relating Thereto (Doc. #162), filed on February 10, 2012. Plaintiff filed an Opposition (Doc. #166) on

February 24, 2012.  Defendant filed a Reply (Doc. #167) on March 5, 2012.

**I.  BACKGROUND**

On March 29, 2010, Bally Technologies Inc. ("Bally") filed suit against Business Intelligence Systems Solutions, Inc. ("BIS2") for patent infringement.  (Compl. (Doc. #1).) Bally claims ownership in United States Patent No. 7,221,367 ("the '367 patent") and Patent No. 7,158,968 ("the '968 patent").[1]  (Id. ¶¶ 6-7, 10-11.)  Bally asserts BIS2 infringed claims one, four, five, seven, ten, and eleven of the '367 patent and claims one through eight and nineteen through twenty-two of the '968 patent.  (Joint Cl. Construction Statement (Doc. #36) at 2-5; Def.'s Opening Br. (Doc. #38) at 12, 30; Pl.'s Opening Br. (Doc. #40) at 13-30; Order ["Claim Construction Order"] (Doc. #72) at 12, 32.)  The '367 and '968 patents relate to systems and methods of data analysis and data visualization for large quantities of data that merchants gather from their customers.

**A.  '367 Patent**

The '367 patent is directed at providing data visualization techniques to present data in a visual format, such as monitoring the number of customers in line at a merchant's store by video camera and graphically superimposing the data obtained over the floor plan of the monitored area.  Claim one is an independent claim, which states in pertinent part:

> A data visualization system comprising . . . a contour generator configured to generate and display one or more contour lines at least partly around each data point or group of data points, each contour line representing data values that are less than the data value[] of the data point[] around which the contour line is displayed.

(Decl. of Robert W. Busby (Doc. #129) ["Busby Decl."], Ex. 2 at column 9.)  Claims two through six are dependent on claim 1.  (Id. at columns 9-10.)

---

[1]  Bally originally brought a claim for patent infringement of United States Patent No. 6,871,194, but the Court granted Bally's Stipulation to Dismiss with Prejudice (Doc. #114) on September 26, 2011. (Order (Doc. #116).)  Accordingly, the Court will dismiss as moot BIS2's second counterclaim (non-infringement of the '194 patent).

1    Claim seven is an independent claim, which states in pertinent part:

2    A method of data visualization comprising the steps of . . . generating
     and displaying one or more contour lines at least partly around each
3    data point or group of data points, each contour line representing data
     values that are less than the data value[] of the data point[] around
4    which the contour line is displayed.

5    (Id. at column 10.)  Claims eight through twelve are dependent on claim seven.  (Id.)

6        **B.  '968 Patent**

7        The '968 patent is directed at allowing users to customize graphical

8    representations of data by including parameters in the database query regarding how to

9    display the data obtained.  Claim one is an independent claim, which states in pertinent part:

10   A data visualization system executed on a storage device, comprising
     . . . a contour generator configured to generate and display one or more
11   contour lines at least partly around each data point or group of data
     points, each contour line representing data values that are less than the
12   data value[] of the data point[] around which the contour line is
     displayed.

13

14   (Busby Decl., Ex. 1 at column 8.)  Claims two through four are dependent on claim one.

15   (Id. at column 9.)

16       Claim five is an independent claim, which states in pertinent part:

17   A method of data visualization executed on a storage device
     comprising the steps of . . . generating and displaying one or more
18   contour lines at least partly around each data point or group of data
     points, each contour line representing data values that are less than the
19   data value[] of the data point[] around which the contour line is
     displayed.

20

21   (Id.)  Claims six through eight are dependent on claim five.  (Id.)

22       Claim nine is an independent claim, which states in pertinent part:

23   A data visualization computer program embodied on a computer
     readable storage device, comprising . . . a contour generator configured
24   to generate and display one or more contour lines at least partly around
     each data point or group of data points, each contour line representing
25   data values that are less than the data value[] of the data point[] around
     which the contour line is displayed.

26

3

(Id.)  Claims ten through twelve are dependent on claim nine.  (Id. at columns 9-10.)

Claim thirteen is an independent claim, which states in pertinent part:

> A method of executing a database query expression on a storage device . . . the method comprising the steps of . . . generating and displaying one or more contour lines at least partly around each data point or group of data points, each contour line representing values of the key performance indicator specified in the contour subclause less than the data value of the data point around which the contour line is displayed.

(Id. at column 10.)  Claim fourteen is dependent on claim thirteen, and claims fifteen through eighteen are dependent on claim fourteen.  (Id.)

Lastly, claim nineteen is an independent claim, which states in pertinent part:

> A computer program stored on tangible storage media comprising executable instructions executed on a storage device for performing a method of executing a database query expression . . . the method comprising the steps of . . . generating and displaying one or more contour lines at least partly around each data point or group of data points, each contour line representing values of the key performance indicator specified in the contour subclause less than the data value of the data point around which the contour line is displayed.

(Id. at columns 10-11.)  Claim twenty is dependent on claim nineteen, and claims twenty-one through twenty-four are dependent on claim twenty.  (Id. at columns 11-12.)

### C.  Common Claim Limitations

Each claim of the '367 and '968 patents requires, or is dependent on a claim that requires, that the product (1) generate and display one or more contour lines, and (2) each contour line represent data values less than the data value(s) of the data point(s) around which the contour line is displayed.[2]  In its Claim Construction Order, the Court construed "contour line" to mean "a line connecting points of data having equal value," and the Court

---

[2]  Claims thirteen and nineteen of Patent '968 use "values of the key performance indicator specified in the contour subclause" instead of "data value" when describing the second common limitation.  (Busby Decl., Ex. 1 at columns 10-11.)  Neither party suggests that the two values differ for purposes of the second common limitation.  Therefore, the Court will treat these two terms as synonymous for purposes of this Motion.

1   construed "data point" to mean "a location in the graphical display."  (Claim Construction

2   Order at 15, 21.)  The Court further concluded that no construction was needed beyond the

3   ordinary meaning for all other terms relevant to this Motion.

4   **D.  BIS2's Software**

5   BIS2 offers the following description of the process by which its software

6   generates and displays data visualizations.  First, the software uses data values, retrieved

7   from its database, to plot data points on a point map made up of grid cells.  (Busby Decl.,

8   Ex. 5 ¶ 104, Ex. 6 ¶¶ 55-56.)  Second, the software generates a color gradient icon for a data

9   point.  (Busby Decl., Ex. 5 ¶ 104.)  The software generates the icon by passing through the

10  data point to compute icon spread values for the grid cells surrounding the data point.

11  (Busby Decl., Ex. 6 ¶¶ 58, 60.)  The data point represents the local maxima, or the highest

12  data value, for the icon.  (Busby Decl., Ex. 5 ¶ 108, Ex. 6 ¶ 61.)  A color is assigned to the

13  data point based on its data value.  (Busby Decl., Ex. 5 ¶ 106.)  Warmer tones are used for

14  higher data values, for example, an icon with a data point representing a high data value

15  would begin with a red data point.  (Id. ¶¶ 104, 106.)  The software then assigns, or

16  "spreads," a color to each grid cell surrounding the data point based on the grid cell's icon

17  spread value and distance from the data point.  (Id. ¶¶ 112-13, Ex. 6 ¶¶ 68-72.)  The colors

18  gradually transition from warm to cool tones as the icon spread values decrease and the

19  distance from the data point increases.  (See Busby Decl., Ex. 5 ¶¶ 104, 111.)  For example,

20  the grid cells surrounding a red data point would gradually transition to orange, then yellow,

21  then green, then blue.  (See id. ¶¶ 104, 121.)

22  Third, the software pastes the icon onto the point map at the coordinates of the

23  data point.  (Id. ¶ 106.)  The icon is displayed as a 2D projection (top view) but can be

24  conceptualized as a 3D cone (side view) with higher data points creating taller cones,

25  although the software does not actually generate cones.  (Id. ¶¶ 104, 106, Ex. 6 ¶ 61.)

26  Fourth, the software repeats steps two and three for each data point.  (Busby Decl., Ex. 5

¶ 107.)

Fifth, the software checks for icons that obscure too much of an adjacent icon. (Id. ¶ 108, Ex. 6 ¶¶ 58, 65-66.)  If one icon obscures an adjacent icon, the software inserts a new small icon displaying a smaller data point.  (Busby Decl., Ex. 5 ¶ 108, Ex. 6 ¶¶ 65-66.) The smaller data point represents the local minima, or the lowest data value, for the icon. (See Busby Decl., Ex. 6 ¶¶ 66-67.)  The software makes a second pass through the data point to compute icon spread values which are now inverted, or greater than the data point at the center of the icon.  (Id. ¶¶ 66-67, 77.)  Colors are assigned to the data point and surrounding grid cells, just as in step two.  (See id. ¶¶ 67, 72.)  However, because the data point now represents a local minima, the colors gradually transition from cool to warm tones as the icon spread values increase and the distance from the data point increases.  (See Busby Decl., Ex. 5 ¶ 121; see also Busby Decl. ¶ 18, Ex. 16 at 98:8-101:2 (Bally's expert, Mr. Ferraro, stated at his deposition on November 3, 2011 that icon number 11-019 03 of Exhibit 12 "appears to me to be inverted"), Ex. 17 (Exhibit 12 from Mr. Ferraro's November deposition showing Mr. Ferraro's hand markings).)

Sixth, the software superimposes the point map over a floor plan.  (Busby Decl., Ex. 5 ¶ 107.)  To illustrate, a final data visualization of a casino floor would display a bank of gaming machines with color gradient icons adjacent to each gaming machine.  (Id. ¶¶ 107, 111, 121.)

Bally's expert, Mr. Ferraro, describes BIS2's software similarly in some respects but differently in other respects.  Mr. Ferraro's description of the first step of the process—retrieving data values and plotting data points—is substantially similar to BIS2's description.  (Decl. of Adam Yowell (Doc. #151) ["Yowell Decl."], Ex. D ¶¶ 40-41, 44.) But Mr. Ferraro describes the second, third, and fourth steps differently.  According to Mr. Ferraro, the software generates a "contour representation" by projecting each data point as a cone.  (Id. ¶ 44.)  The data point represents the highest data value.  (Id.)  The height of the

cone is used to assign "data values" to the grid cells surrounding the data point. (Id. ¶¶ 44, 46.) The data values of the surrounding grid cells are less than the data value of the data point. (Id. ¶¶ 39, 44, 46, 48.) The cone has eight-way symmetry; therefore, all points that are an equal distance from the data point have equal data values. (Id. ¶¶ 47, 53.) Next, colors are assigned to each data value using preset breakpoints, creating tightly packed contour lines. (Id. ¶¶ 45, 47-48.) Mr. Ferraro does not include the fifth step—generating an inverted icon—in his description. Rather, Mr. Ferraro notes in his report that

> [c]ertain modifications to this approach occur when the spread of two
> closely located data points interact with each other. This causes a more
> complex shape depending on the cumulative strategy and whether an
> inverted cone should be used as formed in sinkSpread() function in
> Spreader.java. This special case processing is not relevant to my
> analysis, as a contour representation consisting of contour lines is still
> created around each data point or grou[p] of data points.

(Id. ¶ 46 n.13.) Mr. Ferraro's description of the sixth and final step—superimposing the point map over a floor plan—is substantially similar to BIS2's description. (Id. ¶ 40.)

**E. BIS2's Motion for Summary Judgment of No Infringement**

BIS2 now moves for summary judgment of no infringement as to each asserted claim of the '367 and '968 patents. BIS2 argues its software does not generate or display contour lines; rather, its software generates color gradient icons. Bally responds that BIS2's color gradient icons are actually tightly packed contour lines. BIS2 also argues that even assuming its software generates and displays contour lines, each contour line does not represent a data value less than the data value of the data point around which the contour line is displayed because its software inverts some of its icons creating contour lines around local minima instead of local maxima. Bally responds that when BIS2's software inverts the icon, the underlying data value of the data point does not change and the contour lines surrounding the data point become "even lower" than the data value of the data point. Bally also argues every sub-image generated by BIS2's software must contain at least one local minima for BIS2 to avoid liability for infringement, but BIS2's software does not always

invert at least one icon.

**II.  LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party.  <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002).

The party "seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quotation omitted).  The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue of material fact for trial.  <u>Fairbank v. Wunderman Cato Johnson</u>, 212 F.3d 528, 531 (9th Cir. 2000).  Where a party fails to offer evidence sufficient to establish an element essential to its case, no genuine issue of material fact can exist, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Celotex</u>, 477 U.S. at 322-23.  The Court views all evidence in the light most favorable to the non-moving party.  <u>Cnty. of Tuolumne v. Sonora Cmty. Hosp.</u>, 236 F.3d 1148, 1154 (9th Cir. 2001).

**III.  DISCUSSION**

**A.  Patent Infringement**

The parties dispute whether BIS2's software satisfies the first common limitation, that the software generate and display one or more contour lines.  First, BIS2 argues its

software generates color gradient icons from icon spread values and that the icons contain no lines of any kind, nor does the software contain source code for generating lines. Bally responds that BIS2's color gradient icons are actually tightly packed lines. Second, BIS2 argues even if its software does generate lines, the lines do not connect points of data of equal value because a grid representing the icon spread values of a color gradient icon reveals no adjacent grid cells of equal value. Bally responds that BIS2's software systematically assigns a color to each data value and the color gradient icons reveal rings of color representing adjacent grid cells of equal value. Third, BIS2 argues icon spread values are not the same as data values; Bally does not directly respond to this argument. Fourth, BIS2 argues even if its software generates contour lines, it does not display contour lines. Bally responds that contour lines need not be visible or discernible to be displayed.

The parties also dispute whether BIS2's software satisfies the second common limitation, that each contour line represent data values less than the data value of the data point around which the contour line is displayed. BIS2 argues that because the claims require that each contour line represent data values less than the data value of the data point and some of BIS2's alleged contour lines represent data values greater than the data value of the data point, then BIS2's software does not satisfy the second common limitation. BIS2 concedes that if the Court assumes its color gradient icons are made up of contour lines, then many of BIS2's alleged contour lines are centered around a data point that represents the highest data value in the icon. As a result, the contour lines surrounding the data point represent data values less than the data value of the data point, creating a standard icon, consistent with the second common limitation. However, BIS2 contends its software inverts some of its color gradient icons. The data point of an inverted icon becomes the lowest data value in the icon. As a result, the alleged contour lines surrounding the data point represent data values greater than the data value of the data point, which is the opposite of the second common limitation. Accordingly, BIS2 argues its

software does not satisfy the second common limitation and therefore BIS2 is entitled to summary judgment of no infringement.

Bally responds that when BIS2's software inverts the icon, the underlying data value of the data point does not change.  Although the color scheme is inverted, the data values of the contour lines surrounding the data point become "even lower" than the data value of the data point.  Next, Bally argues that even if the contour lines of an inverted icon do not represent data values less than the data value of the data point, every sub-image generated by BIS2's software must contain at least one inverted icon for BIS2 to avoid liability for infringement.  Bally contends the best BIS2 can argue is that its software always checks to see if a standard icon needs to be inverted, but its software does not always invert at least one standard icon.

Patent infringement occurs when someone "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor."  35 U.S.C. § 271(a).  Determination of infringement is a two step process.  First, the court determines the meaning and scope of the asserted patent claims.  Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc).  Claim language is construed with its ordinary and customary meaning, "the meaning that the [language] would have to a person of ordinary skill in the art in question at the time of the invention."  Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).  Second, the court compares the accused product to the construed claims to determine whether all of the claim limitations are present, either literally, or by equivalent, in the accused product.[3]  Innovention Toys, LLC v. MGA Entm't, Inc., 637 F.3d 1314, 1318-19 (Fed. Cir. 2011).  The accused product or method does not infringe "unless it contains each limitation of the claim, either literally

---

[3]  Bally does not allege patent infringement under the doctrine of equivalents.  (Compl.; Pl.'s Reply in Supp. of Mot. Prelim. Inj. (Doc. #31) at 6; Busby Decl., Ex. 5 ¶ 19.)

or by an equivalent." <u>Freedman Seating Co. v. Am. Seating Co.</u>, 420 F.3d 1350, 1358 (Fed. Cir. 2005).  Whether the accused product or method meets each claim limitation is a question of fact.  <u>Bai v. L & L Wings, Inc.</u>, 160 F.3d 1350, 1353 (Fed. Cir. 1998).  Thus, summary judgment of no infringement is appropriate in a literal infringement case when no reasonable jury could find that every limitation in the asserted claim is found in the accused product.  <u>Gart v. Logitech, Inc.</u>, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

Here, no genuine issue of material fact remains that the accused BIS2 software does not infringe the patents-in-suit because BIS2's software does not embody every limitation of the asserted claims.  Assuming without deciding that BIS2's software satisfies the first common limitation for all asserted claims,[4] BIS2's software does not satisfy the second common limitation because BIS2 has met its burden of demonstrating that no genuine issue of material fact remains that each alleged contour line generated by BIS2's software does not represent data values less than the data value of the data point around which the contour line is displayed.  In other words, BIS2 has met its burden of demonstrating that no genuine issue of material fact remains that BIS2's software does not generate and display each alleged contour line around a local maxima.

## 1.  Bally's First Theory of Infringement

Bally offers no evidence of its theory that when BIS2's software inverts a standard icon, the underlying data value of the data point does not change and the data values of the contour lines surrounding the data point become "even lower" than the data value of the data point.  Furthermore, Bally's theory that the data values of the contour lines surrounding the data point become "even lower" than the data value of the data point is

---

[4]  BIS2 argues that icon spread values, not data values, are used to build color gradient icons; therefore, the alleged contour lines do not represent data values.  (Def.'s Mot. Summ. J. at 18; Busby Decl., Ex. 15 ¶ 1, Ex. 16 at 72:11-73:19.)  However, the Court need not address this distinction because even assuming the alleged contour lines represent data values, no genuine issue of material fact remains as to whether those data values are less than the data value of the data point.

contradicted by its own expert, Mr. Ferraro, who testified that "inverted cones . . . could have values that decrease from the outside—from the furthest extent of the cone inward towards the center." (Busby Decl., Ex. 16 at 140:12-14.)

BIS2 offers evidence consistent with Mr. Ferraro's testimony. Specifically, BIS2's expert, Mr. Berry, states that "in the second pass, some smaller icons for local minima are created." (Busby Decl., Ex. 5 ¶ 108.) BIS2's other expert, Mr. Baer, states that the second pass inserts a "new small color gradient icon" displaying a "smaller data point." (Busby Decl., Ex. 6 ¶¶ 65-66.) "[T]he small data values appear as an inverted cone" with "icon spread z-values surrounding the coordinates of a data point that are greater than the icon spread z-value at the actual coordinates of the data point." (Id. ¶¶ 66-67.) Mr. Baer concludes that "[t]he BIS2 source code does not generate and display contour lines. But, even if it does, each of the contour lines is not 'less than' the data points they are around." (Id. ¶ 67.)

2. Bally's Second Theory of Infringement

Bally argues that even if the contour lines of an inverted icon do not represent data values less than the data value of the data point, every sub-image generated by BIS2's software must contain at least one inverted icon for BIS2 to avoid liability for infringement. Bally contends the best BIS2 can argue is that its software always checks to see if a standard icon needs to be inverted, but its software does not always invert at least one standard icon. In other words, Bally argues that BIS2's software infringes because it is capable of performing the patented method, and proof of actual performance is not required.

Pursuant to 35 U.S.C. § 101, the following four classes of subject matter are eligible for patent protection: "process, machine, manufacture, or composition of matter." Process claims, also known as method claims, describe a series of acts or steps, whereas machine claims, also known as product or apparatus claims, describe a tangible item. 35 U.S.C. § 100(b); Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 576 F.3d 1348, 1362-63

(Fed. Cir. 2009) (en banc).

### a. Method Claims

In Cardiac Pacemakers, the United States Court of Appeals for the Federal Circuit set forth the rule for infringement of a method claim. 576 F.3d at 1359. "A method claim is directly infringed only by one practicing the patented method." Id. (quoting Joy Techs., Inc. v. Flakt, Inc., 6 F.3d 770, 775 (Fed. Cir. 1993). In Joy Technologies, the Federal Circuit further explained that a method claim is directly infringed by the sale of an apparatus that actually performs the method, but a method claim is not directly infringed by the sale of an apparatus that merely is capable of performing the method. 6 F.3d at 774-75. Furthermore, a method claim that uses "comprising" as a transitional phrase between the preamble and the body of the claim, does not exclude additional steps. Dow Chem. Co. v. Sumitomo Chem. Co., 257 F.3d 1364, 1380-81 (Fed. Cir. 2001). As a result, "infringement is not avoided by the presence of elements or steps in addition to those specifically recited in the claim . . . provided that all of the elements stated in the claim are present." Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 200 F.3d 795, 811-12 (Fed. Cir. 1999). Similarly, "an accused product that sometimes, but not always, embodies a claimed method nonetheless infringes." Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1311-12 (Fed. Cir. 2005) (quotations omitted).

In short, actual performance of every step of the recited method is required to prove direct infringement of a method claim. A defendant cannot avoid liability by adding steps to the recited method, but the plaintiff still must prove actual performance of every step of the recited method.

Here, independent claim seven of the '367 patent and independent claims five and thirteen of the '968 patent are method claims. (Busby Decl., Ex. 1 at columns 9-10, Ex. 2 at column 10.) All three claims include the transitional phrase "comprising the steps of," conveying a non-exhaustive list of steps. (Id.) When compared to the recited steps, BIS2's

software adds the additional step of inverting some of the standard icons, which results in contour lines around local minima.  Because the second claim limitation requires that the software generate and display <u>each</u> contour line around local maxima, not <u>some</u> contour lines around local maxima and some around local minima, BIS2's software does not perform the claimed method when it performs this additional step.

But BIS2 cannot avoid liability for infringement of the asserted method claims simply because its software sometimes does not perform the claimed method, provided Bally can offer proof that sometimes BIS2's software actually performs the claimed method by generating and displaying each contour line around a local maxima.  Bally could have met its burden by offering evidence of a data visualization generated by BIS2's software that displays standard icons only.  But Bally fails to identify such proof in the record.  Because of Bally's failure of proof, no genuine issue of material fact remains that BIS2's software does not infringe the asserted method claims.

### b.  Apparatus Claims

While a method claim in certain circumstances can be infringed by a product that infringes some of the time and does not infringe other times, apparatus claims are infringed only by an apparatus that satisfies all the claim limitations all of the time.  <u>Cross Med. Prods.</u>, 424 F.3d at 1311-12.  For example, if a software program performs the recited method every fifth time the program is run, then the software program is not infringing the method claim four out of five times the program is run, but it is infringing the method claim on the fifth time.  But if the software program only satisfies four out of five of the apparatus claim limitations, the program does not infringe the apparatus claim.  Either the software program is a match for the asserted apparatus claim, or it is not a match, because "apparatus claims cover what a device is, not what a device does."  <u>Hewlett-Packard Co. v. Bausch & Lomb Inc.</u>, 909 F.2d 1464, 1468 (Fed. Cir. 1990) (emphasis omitted).

Some apparatus claims recite the structure of the apparatus and the functions it

14

performs.  See Typhoon Touch Techs., Inc. v. Dell, Inc., 659 F.3d 1376, 1380 (Fed. Cir. 2011).  Other apparatus claims recite the structure of the apparatus and the functions it is capable of performing.  See id.  Courts refer to the later category as an apparatus claim "drawn to capability."  Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197, 1204 (Fed. Cir. 2010).  An apparatus claim "drawn to capability" can be infringed by an apparatus that is reasonably capable of satisfying all the claim limitations all of the time.  Id.  By contrast, an apparatus claim not drawn to capability requires proof that the accused apparatus actually satisfies all the claim limitations all of the time.  Id.

In Finjan, the asserted apparatus claims recited software components with specific purposes, for example, "a logical engine for preventing execution."  Id. at 1204-05 (emphasis omitted).  The claims did not require that the software components be active or enabled to perform the purposes, just that they be capable of performing the claimed purposes.  Id.  The Federal Circuit held that such language was "drawn to capability," thus, the proper test was whether the accused apparatus was reasonably capable of satisfying all of the claim limitations.  Id.

In Ball Aerosol and Speciality Container, Inc. v. Limited Brands, Inc., the asserted apparatus claim recited a candle tin comprising a holder and a cover to be placed under the holder when the candle is lit to prevent scorching the surface on which the holder is placed.  555 F.3d 984, 987-88 (Fed. Cir. 2009).  The asserted apparatus claim also recited that the holder have feet on the bottom "resting upon the . . . cover to seat the holder on the cover."  Id. at 988.  The Federal Circuit concluded that the claim language was not drawn to capability because it "specifie[d] a particular configuration."  Id. at 994.  The fact that the accused candle holder was capable of being configured as recited was insufficient for a finding of infringement, and the plaintiff failed to offer evidence that the accused candle holder was ever placed in the infringing configuration.  Id. at 995.

In Brocade Communications Systems, Inc. v. A10 Networks, Inc., the first

asserted apparatus claim recited a switch "configured to act in concert with one or more other switches" to perform certain functions.  --- F. Supp. 2d ----, 2012 WL 2150305, at *4 (N.D. Cal. June 12, 2012).  The district court compared this apparatus claim to two other apparatus claims that did not include "configuration language that could arguably require actual operation."  Id. at *6 (internal quotation marks omitted).  Rather the other two apparatus claims recited an article of manufacture that included "instructions . . . executable" to perform certain functions.  Id.  The district court concluded that "instructions . . . executable" meant instructions capable of being executed.  Id.

### i.  Claims 19-22 of the '968 Patent

The Court previously addressed Bally's capability argument in its Claim Construction Order in the context of claims 19-22 of the '968 patent.  (Claim Construction Order at 39-40.)  The Court concluded that claims 19-22 are product or apparatus claims, and the claim language requires actual execution of the recited function; therefore, actual satisfaction of all the claim limitations is required to establish infringement on claims 19-22 of the '968 patent.  (Id.)

Bally fails to identify any evidence in the record that BIS2's software actually satisfies all of the claim limitations.  More specifically, Bally fails to offer evidence that BIS2's software includes "instructions executed on a storage device" for "generating and displaying one or more contour lines . . . each contour line representing [data values] less than the data value of the data point."  BIS2 offers evidence that its software includes code for generating and displaying some contour lines around local maxima, but its software does not include code for generating and displaying each contour line around local maxima because BIS2's software also will generate and display some contour lines around local minima.  Because the claim limitation requires each, not some, no genuine issue of material fact remains that BIS2's software does not infringe claims 19-22 of the '968 patent.

///

ii.  Claim One of the '367 Patent and Claims One and Nine of the '968 Patent

The Court has not previously ruled on whether the remaining independent claims, claim one of the '367 patent and claims one and nine of the '968 patent, are apparatus claims drawn to capability.  All three claims recite an apparatus (i.e., a system or computer program) "comprising . . . a contour generator configured to generate and display one or more contour lines . . . each contour line representing data values that are less than the data value[] of the data point[]."  (Busby Decl., Ex. 1 at columns 8-9, Ex. 2 at column 9.)  Similar to the configuration language in Ball Aerosol and Brocade, here, each claim requires that the apparatus be "configured to" perform the recited function.  Accordingly, just as in Ball Aerosol and Brocade, actual satisfaction of all the claim limitations is required to establish infringement.  As discussed above with regard to claims 19-22 of the '968 patent, Bally fails to identify any evidence in the record that BIS2's software actually satisfies all of the claim limitations.

Even assuming that claim one of the '367 patent and claims one and nine of the '968 patent are drawn to capability, Bally fails to identify any evidence in the record that BIS2's software is capable of satisfying all of the claim limitations.  Specifically, Bally fails to offer evidence that BIS2's software comprises a contour generator that is capable of being configured to generate and display each contour line around a local maxima.  Rather, the evidence shows BIS2's software includes a contour generator capable of being configured to generate and display some contour lines around a local maxima and some around a local minima.  In sum, Bally fails to identify any evidence in the record that BIS2's software includes a contour generator configured to, or capable of being configured to, generate and display each contour line around a local maxima.  As such, no genuine issue of material fact remains that BIS2's software does not infringe the asserted apparatus claims.

BIS2 has met its burden of demonstrating that no genuine issue of material fact

remains that its software does not infringe the '367 and '968 patents. Bally has failed to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Therefore, the Court will grant BIS2's Motion for Summary Judgment of No Infringement. The Court also will dismiss as moot BIS2's first and third (non-infringement) counterclaims.

**B.  Willful Infringement**

BIS2 moves for summary judgment on Bally's willful infringement claim. (Mot. Summ. J. No Willful Infringement (Doc. #130).) "[T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). Because Bally cannot establish the predicate infringement, Bally cannot establish willful infringement. Therefore, the Court will grant BIS2's Motion for Summary Judgment of No Willful Infringement.

**C.  Invalidity**

In response to Bally's allegations of patent infringement, BIS2 asserted invalidity of the '367 and '968 patents as an affirmative defense. (Am. Answer (Doc. #22) at 5 ¶ 19.) BIS2 also counterclaimed for a declaratory judgment of patent invalidity. (Id. at 7 ¶ 1.) Bally now moves for partial summary judgment as to BIS2's invalidity defense and counterclaim. (Mot. Partial Summ. J. Invalidity Defense & Countercl. (Doc. #135).)

A finding of no infringement renders moot an affirmative defense of invalidity to a patent infringement claim. PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1368 (Fed. Cir. 2007). However, whether a finding of no infringement renders moot a counterclaim for declaratory judgment of patent invalidity depends on whether an actual case or controversy remains between the parties. See Benitec Austl., Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1345-46 (Fed. Cir. 2007) (addressing whether subsequent events can divest a district court of jurisdiction over a patent invalidity counterclaim); see also Altvater v. Freeman, 319 U.S.

359, 363 (1943) (distinguishing between an invalidity defense, which is disposed of by a decision of non-infringement, and an invalidity counterclaim, which is not necessarily disposed of by a decision of non-infringement).  An actual controversy must exist at all stages of review.  28 U.S.C. § 2201(a); Steffel v. Thompson, 415 U.S. 452, 459 & n.10 (1974).  The party seeking the declaratory judgment bears the burden of demonstrating the existence of an actual case or controversy "at the time the claim for declaratory relief was filed and that it has continued since."  Benitec Austl., 495 F.3d at 1344.

Here, BIS2 presents no argument or evidence that an actual case or controversy would exist to support declaratory judgment jurisdiction in the event the Court finds no infringement.  Furthermore, in response to Bally's argument for summary judgment on BIS2's invalidity defense and counterclaim, BIS2 states that it "seeks to prove only that Bally's infringement position cannot be correct as it would necessarily invalidate claims of the asserted patents."  (Def.'s Opp'n to Mot. Summ. J. Regarding Invalidity (Doc. #140) at 2.)  Because Bally's infringement position fails for other reasons, as discussed above, BIS2's stated purpose for bringing its invalidity counterclaim no longer applies.  Therefore, the Court will deny as moot BIS2's Motion for Partial Summary Judgment Regarding BIS2's Invalidity Defense and Counterclaim.

### D.  Admissibility of Mr. Ferraro's Software

BIS2 moves to strike or to exclude Mr. Ferraro's two software programs and all material and testimony related thereto.  (Mot. to Strike or In Limine to Exclude (Doc. #162).)  The Court will evaluate whether the disputed evidence is relevant only as to Bally's infringement claim because Bally does not argue that the disputed evidence is relevant to any other claim.  The disputed evidence relates to the first common limitation to all asserted claims, but does not relate to the second common limitation.  Specifically, Mr. Ferraro refers to the process by which BIS2's software inverts icons as "not relevant" to his analysis.  (Yowell Decl., Ex. D ¶ 46 n.13.)  As discussed above, the Court need not address

the first common limitation because no genuine issue of material fact remains that BIS2's software does not satisfy the second common limitation.  Therefore, the Court will deny as moot BIS2's Motion to Strike.

Furthermore, the disputed evidence is not relevant beyond summary judgment because the Court finds no genuine issue of material fact remains that BIS2's software does not infringe the '367 and '968 patents and Bally does not argue that the disputed evidence is relevant to any claim other than infringement.  Therefore, the Court will deny as moot BIS2's Motion In Limine to Exclude.

**IV.  CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Business Intelligence Systems Solutions, Inc.'s Motion for Summary Judgment of No Infringement (Doc. #128) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant's first, second, and third (non-infringement) counterclaims are hereby DISMISSED as moot.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment of No Willful Infringement (Doc. #130) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiff Bally Technologies, Inc.'s Motion for Partial Summary Judgment Regarding BIS2's Invalidity Defense and Counterclaim (Doc. #135) is hereby DENIED as moot.

IT IS FURTHER ORDERED that Defendant's Motion to Strike or In Limine to Exclude Mr. Ferraro's Two Software Programs and All Material and Testimony Relating Thereto (Doc. #162) is hereby DENIED as moot.

DATED: August 23, 2012

PHILIP M. PRO
United States District Judge